# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**BODIE JAMES DAVIS,**

      **Petitioner,**

**v.**

**THOMAS BIRKETT,**

      **Respondent.**

_____/

**No. 01-CV-10202**

**HON. DAVID M. LAWSON**
**District Judge**

**HON. R. STEVEN WHALEN**
**Magistrate Judge**

## REPORT AND RECOMMENDATION

Petitioner Bodie James Davis, an inmate at the Alger Correctional Facility in Munising, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of first-degree premeditated murder, M.C.L. 750.316 and possession of a firearm during the commission of a felony, M.C.L. 750.227b in the Recorder's Court for the City of Detroit[1]  The petition has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that the petition be DENIED.

## I.   PROCEDURAL HISTORY

---

[1]Now Wayne County Circuit Court, Criminal Division.

-1-

On July 24, 1996 a Recorder's Court jury convicted Petitioner of first-degree premeditated murder, MCL 750.316; MSA 28.548 in the killing of William Todd Harris. The jury also found Petitioner guilty of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2).   The trial court sentenced Petitioner to life imprisonment for the first-degree premeditated murder conviction and two years imprisonment for the felony-firearm conviction.

Petitioner then appealed as of right to the Michigan Court of Appeals, which affirmed his convictions on December 19, 1997 in an unpublished *per curiam* opinion.  Plaintiff's retained appellate counsel, David Steingold, misaddressed, then sent a copy of the decision on December 29, 1997 to a state correctional facility in Jackson, Michigan, although Petitioner was then housed in a county jail.  Along with the decision, Steingold enclosed a letter stating that Plaintiff had until January 9, 1998 to seek leave to appeal in the Michigan Supreme Court. Steingold's letter did not state that a delayed leave to appeal could be filed up until the fifty-sixth day after the Court of Appeals decision.   After receiving the returned mail, Steingold re-sent the appellate court decision and accompanying letter to Petitioner's actual address on January 12, 1998.  Petitioner did not receive Steingold's correspondence until January 14, 1998.

On March 5, 1998, Petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court. On March 11, 1998, the Michigan Supreme Court declined to consider Petitioner's pleadings pursuant to MCR 7.302 (C)(3), which allows only fifty-six days after the Court of Appeals decision to file for leave to appeal.

-2-

On August 3, 1998 Petitioner filed a motion for relief from judgment, pursuant to subchapter 6.500 of the Michigan Court Rules, claiming that his appellate counsel failed to raise meritorious arguments in his appeal of right.[2]   Petitioner raised the issues of (1)inappropriate bind over for lack of evidence of the charge of premeditated murder,(2) improper jury selection in violation of MCR 2.511(F), (3) trial counsel's ineffectiveness for failure to object to the jury selection process, (4) insufficient evidence to support the conviction and (5)the denial of a fair trial due to the cumulative effects of the combined errors.[3]

On November 19, 1998, the trial court denied Petitioner's motion for relief from judgment.  Quoting *Strickland v. Washington,* 466 U.S. 668, at 691-692; 104 S.Ct. 2052, 2067; 80 L.Ed. 2d (1984), the court found that Petitioner failed to show with reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Memorandum Opinion and Order Denying Motion for Relief from Judgment* at 2.

On December 20, 1998, Petitioner filed an application for leave to appeal to the Court of Appeals. His pleading contained the following issue statements:

---

[2]Petitioner also filed a supplemental brief on October 28, 1998.

[3]Although not listed among Petitioner's issue statements, he argued in his motion for relief from judgment that ineffective assistance of appellate counsel was the cause of his failure to file a leave to appeal in the Michigan Supreme Court within the fifty-six day limit. Petitioner also raised the same factual issue in his subsequent leave to appeal pleadings to both the Court of Appeals and Michigan Supreme Court.

I.      DEFENDANT'S SHIRT, STATEMENT, LINE-UP AND U.S.
        CURRENCY, OBTAINED FROM DEFENDANT DAVIS SHOULD
        BE SUPPRESSED AS THE PRODUCT OF A DELAYED
        ARRAIGNMENT, WHERE SAID DETENTION WAS EMPLOYED
        AS A TOOL TO DIRECTLY PROCURE SAID EVIDENCE.

II.     WHERE THE COMPLAINT FAILED TO ADEQUATELY
        SUPPORT THE ISSUANCE OF THE ARREST WARRANT,
        DEFENDANT DAVIS WAS DENIED HIS FOURTH AND
        FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED
        STATES CONSTITUTION AND MICHIGAN CONSTITUTION OF
        1963, Art. 1, § 11.

III.    WHERE THE TRIAL COURT FAILED TO CONDUCT AN
        EVIDENTIARY HEARING, DEFENDANT DAVIS WAS DENIED
        GUARANTEED BY THE UNITED STATES CONSTITUTION,
        AMENDMENT XIV § 1, AND MICHIGAN CONSTITUTION OF
        1963, Art. 1 § 2, WHERE HE WAS NOT ALLOWED TO SEEK
        LEAVE TO APPEAL IN THE MICHIGAN SUPREME COURT,
        WHERE PROSECUTOR'S AND DEFENDANT'S REPRESENTED
        BY COUNSEL ARE ALLOWED TO SEEK LEAVE ON UNTIMELY
        APPLICATION.

IV.     THERE THE TRIAL COURT ALLOWED THE "STRUCK-JURY
        METHOD" TO BE USED DURING JURY SELECTION IN
        VIOLATION OF MCR 2.511(f), DEFENDANT'S CONVICTION
        MUST BE REVERSED.

V.      THE EXAMINING MAGISTRATE COURT ABUSED ITS [sic]
        DISCRETION WHEN IT BOUND [sic] DEFENDANT OVER TO
        STAND TRIAL, WHERE THE PROSECUTION FAILED TO
        ESTABLISH THE MENS REA OF PREMEDITATION AND
        DELIBERATION.

VI.     THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A VERDICT
        OF GUILTY OF PREMEDITATED FIRST-DEGREE MURDER.

VII.    THE CUMULATIVE EFFECT OF ALL THE ERRORS COMBINED
        DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL.

On June 8, 2000, the Court of Appeals denied Petitioner's delayed application for leave to appeal for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D).

On July 25, 2000, Petitioner filed a delayed application for leave to appeal to the Michigan Supreme Court. In addition to the verbatim inclusion of the seven issue statements listed in his Appeals Court pleading, he raised the argument that the trial and Appeals Court abused their discretion in denying his appeal.[4] On December 27, 2000, the Michigan Supreme Court denied the delayed application for leave to appeal on the basis that Petitioner had failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

On May 14, 2001 Petitioner filed a Petition for Writ of Habeas Corpus in this Court, pursuant to 28 U.S.C. § 2254. His amended petition, filed on December 20, 2001 and granted March 10, 2003 contains the following issues.[5]

I.   WHERE THERE WAS INSUFFICIENT PROBABLE CAUSE, PETITIONER'S WARRANTLESS ARREST WAS IN DIRECT VIOLATION OF THE UNITED STATES CONSTITUTIONAL BILL OF RIGHTS, AMENDMENTS IV, V, AND XIV.

---

[4]Petitioner's Michigan Supreme Court petition included an eighth issue, listed as argument (1): "Did the L.C./C.A. abuse their discretion, create manifest injustice, err, and/or do [sic] their decisions conflict with other state/federal appellate court decisions to mandate this honorable state supreme court to rule on constitutional question." *Delayed Application for Leave to Appeal* at I.

[5]In Petitioner's amended pleading to this Court, he withdrew a seventh issue which was listed in the original petition as Ground IV: "Petitioner was deprived of due process of law when the line-up was the product of suggestion and coercion in violation of the United States Constitutional Bill of Rights, Amendments V and XIV. *Petition for Writ of Habeas Corpus* (original pleading) at 8a.

II. PETITIONER WAS DEPRIVED OF DUE PROCESS OF LAW WHEN HE WAS ILLEGALLY DETAINED UNDER ARREST WITHOUT A WARRANT AND HIS ARRAIGNMENT WAS UNCONSTITUTIONALLY DELAYED WHILE THE INVESTIGATING POLICE OFFICERS COLLECTED EVIDENCE IN VIOLATION OF THE UNTIED STATES CONSTITUTIONAL BILL OF RIGHTS, AMENDMENTS IV, V AND XIV.

III. WHERE THE PETITIONER'S CONFESSION WAS INDUCED THROUGH COERCION, THE ADMISSION OF SAID CONFESSION INTO EVIDENCE WAS IN VIOLATION OF THE UNITED STATES CONSTITUTIONAL BILL OF RIGHTS, AMENDMENTS V AND XIV.

IV. PETITIONER WAS DEPRIVED OF DUE PROCESS OF LAW WHEN THERE WAS INSUFFICIENT INFORMATION CONTAINED IN THE COMPLAINT TO SECURE A VALID ARREST WARRANT IN VIOLATION OF THE UNITED STATES CONSTITUTIONAL BILL OF RIGHTS, AMENDMENTS IV AND XIV.

V. PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHERE DAVID S. STEINGOLD FAILED TO TIMELY SERVE PETITIONER WITH THE COURT OF APPEALS OPINION AND ORDER CAUSING HIM TO DEFAULT IN THE MICHIGAN SUPREME COURT BEING IN VIOLATION OF THE UNITED STATES CONSTITUTIONAL BILL OF RIGHTS, AMENDMENT XIV.

VI. PETITIONER WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE APPLICATION OF THE LAWS WHERE THE MICHIGAN SUPREME COURT DENIED FILING OF THE (UNTIMELY) APPLICATION FOR LEAVE TO APPEAL, WHILE ROUTINELY ALLOWING PROSECUTOR'S AND OTHER APPELLANTS WHO ARE REPRESENTED BY COUSEL TO FILE UNTIMELY APPLICATIONS, IN VIOLATION OF THE UNITED STATES CONSTITUTIONAL BILL OF RIGHTS, AMENDMENT XIV.

On March 24, 2005, the Court granted Petitioner's motion for leave to file a

supplemental brief, (Docket no. 48, referencing Docket no. 46) raising the following issue:

> VII.  PETITIONER'S [sic] CONVICTION AND SENTENCE MUST BE
> VACATED WHERE IN SUPPORT OF PETITIONER'S [sic]
> ALLEGATIONS OF CONSTITUTIONAL ERRORS, PETITIONER
> HAS PRESENTED NEW RELIABLE EVIDENCE OF ACTUAL
> INNOCENCE.

On January 3, 2002, the Court referred all pretrial matters in this petition to Magistrate

Judge Charles E. Binder. On October 8, 2002, the Clerk of the Court reassigned the petition

from Magistrate Judge Binder to Magistrate Judge R. Steven Whalen.

## II.   FACTS

### A.   Background Facts

On the night of December 20, 1995, William Todd Harris went to see Petitioner

concerning a dispute whether Petitioner should receive a portion of the money Harris had

recently stolen. *Jury Trial*, July 22, 1996, at 231.  Ponce DeLeon Brown, a resident of

Harris's neighborhood, testified that upon hearing gunshots at around 1:00 a.m., he looked

out his window and saw Harris running down the street being chased by "about five" people,

including Petitioner. *Id.* at 162.  As Harris fell directly in front of Brown's house, Brown

saw Petitioner, who held a shotgun, walk up to Harris and shoot him in the head.  According

to Brown, some of the individuals who had been chasing Harris, including Petitioner, placed

Harris in his own car, then entered the same car and drove away. *Id.* at 183.  Brown testified

that he identified Petitioner in a line up on December 23, 1995. *Id.* at 190. On July 24, 1996

a Recorder's Court jury convicted Petitioner of first-degree premeditated murder and

-7-

possession of a firearm during the commission of a felony. The trial court sentenced Petitioner to life imprisonment for the first-degree premeditated murder conviction and two years imprisonment for the felony-firearm conviction.

### B.   The *Walker* Hearing

Prior to Petitioner's trial, the court held a *Walker*[6] hearing in which Petitioner argued for suppression of his statement to police on December 23, 1995 that he had killed the victim in self defense.[7] Petitioner alleged that his statement was both involuntary and in violation of rights pursuant to *Miranda*.[8] He testified that upon his December 22, 1995 arrest, he told police officer Samuel Quick that he did not want to make a statement, but wanted to make a telephone call and speak to an attorney. *Walker Hearing* at 26. He stated that Officer Quick told him that he would not allow him to make a telephone call or give him access to legal assistance. *Id.* He testified that on several occasions during the afternoon of December 22, 1995, Officer Quick came into the room where he was being held, asking him if he killed the victim and showing him a picture of another suspect. *Id*. at 25. He stated that he felt that Quick was pressuring him to make a statement, and threatened to plant the victim's blood on his shirt if he did not confess. *Id.* at 27-28. Petitioner testified that after being identified in

---

[6]  *People v. Walker (On Rehearing),* 374 Mich. 331, 132 N.W.2d 87 (1965).

[7]Recorder's Court transcript of the hearings held on March 1, 1996 contains both a *Walker* and *Wade* hearing.  Since  Petitioner's present claims allude only to the *Walker* portion of the hearing, this Court will omit discussion of the *Wade* claims.

[8]  *Miranda v. Arizona,* 384 U.S. 436; 86 S.Ct. 1602; 16 L.Ed.2d 694 (1966)

a lineup on December 23, 1995, Quick showed him a Constitutional Rights Form only after he had handwritten a statement denying that he had killed the victim.  He stated that in addition to writing out a statement denying his guilt, he signed his name on two blank sheets of paper after being told by Quick that his handwritten statement declaring his innocence would be typed in above his signature.  *Id*. at 29.

Officer Quick testified that Petitioner was arrested after the victim's girlfriend told police that the victim had been "having problems" with Petitioner.  *Walker Hearing* at 5-6. Shortly before his death, the victim told his girlfriend that he was going to see Petitioner.  *Id.* Quick testified that he did not issue a *Miranda* warning to Petitioner on December 22, 2005 because his questions on the 22nd were limited to general inquiries about where he had been at the time of the shooting and if he knew the victim. *Id.* at 6.  In contrast to Petitioner's testimony, Quick testified that he did not ask Petitioner to make a statement on the 22nd.  He testified he advised Petitioner of his rights verbally and also allowed him to read the *Miranda* warning before he made a statement.  *Id.* at 8.  Quick stated that Petitioner never asked for an attorney. *Id.* at 11.  He stated that he never threatened or physically coerced Petitioner in any  way. *Id.* at 12.  Quick testified that the sheets signed by Petitioner contained Quick's handwritten statement summarizing their conversation in which Petitioner claimed he had killed the victim in self-defense. *Id*. at 13.

The trial court declined to grant Petitioner's request to suppress his confession.  The court rejected Petitioner's testimony that he signed blank pieces of paper in anticipation that

the police would later type in a statement of non-culpability, stating  Petitioner's rendition of the circumstances of his confession "defie[d] imagination ." *Id.* at 68.  Finding that he did not believe the Petitioner's statements were involuntary, he noted that he perceived Petitioner as "someone whose will is not likely to be overborne very easily," and also accepted the officer's testimony that he had read Petitioner his *Miranda* rights prior to his confession.  *Id.* at 68-70.  The court found that although it was "wise at any time. . . a person is in custody to advise him of his rights,"  prior to a *Miranda* warning being issued to Petitioner on his second day of custody, "nothing that was said or done that would incriminate the [Petitioner]." *Id.* at 67.

### III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions.  Specifically, 28 U.S.C. §2254(d) provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -
>
> (1) resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams v Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412.   Under subsection (d)(1), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law.  *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413.  *Williams* further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case."  *Id*.

In elucidating the "unreasonable application" clause of §2254(d)(1), the Supreme Court in *Williams* expressly disavowed the subjective "reasonable jurist" test in favor of an objective test of reasonableness:

> "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable ....
>
> [An] unreasonable application of federal law is different from an

> incorrect application of federal law ....Under §2254(d)(1)'s 'unreasonable application clause', then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or correctly. Rather, that application must also be unreasonable. Id. At 422."

*Williams* acknowledged the difficulty in defining the term "unreasonable," but explained that "it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning." *Id*. at 410. In *Lockyer v. Andrade*, 538U.S.63, 71; 123 S.Ct. 1166, 1172, 156 L.Ed.2d 471 (2003), the Supreme Court stated, "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law."

## IV.   ANALYSIS

### A.   Procedural Default

As a threshold matter, Respondent argues that the underlying substantive issues of the voluntariness of Petitioner's confession and insufficient probable cause for the warrantless arrest were procedurally defaulted in state court. Respondent states that Petitioner's failure to file a delayed application for leave to appeal in the Michigan Supreme Court within fifty-six days from the date of the Court of Appeals decision prevents review of his claims on their merits by this Court. *Respondent's Answer to Amended Petition* at 3. As stated above, Petitioner argued in his motion for relief from judgment on August 3, 1998 that his attorney's failure to promptly inform him of the Court of Appeals' decision and the

ensuing deadline amounted to a denial of effective assistance of appellate counsel. *Amended Petition* at 3b.

The Supreme Court in *Wainwright v. Sykes,* 433 U.S. 72, 85; 97 S.Ct. 2497; 53 L.Ed.2d 594 (1977) held that federal habeas review is precluded if the last state court rendering a judgment based its decision on a petitioner's procedural default. Procedurally defaulted claims are barred unless a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); 28 U.S.C.A. § 2254; *See also Hicks v. Straub,* 377 F.3d 538, 551 -552 (6th Cir. 2004).[9]

Cause may be established by showing that a petitioner was denied effective assistance of counsel. "If [a petitioner] can show that he received ineffective assistance of appellate counsel that rose to the level of a violation of his Sixth Amendment rights, it would excuse his procedural default." *Martin v. Mitchell,* 280 F.3d 594, 605 (6th Cir. 2002). A petitioner has a Sixth Amendment right to effective assistance of appellate counsel. *Mapes v. Coyle,* 171 F.3d 408 (6th Cir. 1999). Further, ineffective assistance of counsel claims are not limited to those involving tactical omissions. A procedural default stemming from "counsel's ignorance or inadvertence rather than from a deliberate decision" constitutes sufficient cause. *Murray v. Carrier*, 477 U.S. 478, 487, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

---

[9]The Court will discuss Petitioner's claim of actual innocence (Issue VII) in section **B.**

-13-

Where "cause" is predicated on the ineffective assistance of appellate counsel, "prejudice" is established by showing that but for counsel's deficiencies, the claims would have succeeded on appeal. "Attorney error that rises to the level of ineffective assistance in violation of the Sixth Amendment may constitute cause for a procedural default." *Hicks,* 377 F.3d at 557; *Murray,* 477 U.S. at 488-89, 106 S.Ct. at 2645-2646, 91 L.Ed.2d 397 (1986). *Hutchison v. Bell,* 303 F.3d 720, 743 (6th Cir. 2002), in determining whether there was prejudice sufficient to overcome a procedural default, stated that "the touchstone of materiality is a 'reasonable probability' of a different result." *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Thus, the resolution of the procedural default issue depends in part on the strength of the underlying substantive issue.  To overcome a procedural default, Petitioner must establish first that the default - allegedly due to the ineffectiveness assistance of his appellate counsel - rose to the level of a constitutional violation.  Second, he must prove that the alleged ineffectiveness, which barred him from preserving the argument that the trial judge erred in admitting his confession into evidence at trial,  prevented him from receiving a "a verdict worthy of confidence."  *Hutchison ,* 303 F.3d at 743.

### 1.    Ineffective Assistance of Appellate Counsel

Petitioner, as stated above, alleges that his attorney misaddressed the notification of the Court of Appeals decision and further, failed to state that in addition to twenty-one days given to file a leave to appeal,  he had up to fifty-six days to file an application for delayed

-14-

leave to appeal to the Michigan Supreme Court.[10]

The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.*, 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* Court emphasized that "[j]udicial scrutiny of counsel's performance

_____

[10]*Respondent's Answer to Amended Petition* at 7 argues that Petitioner has defaulted his ineffective assistance of appellate counsel claim, stating that "Petitioner's failure to fairly present the state courts with the appropriate factual basis for his cause argument precludes him from asserting it [in the ongoing proceeding]."

Contrary to Respondent's claim, Petitioner raised the "appropriate factual basis" in his *Verified Motion for Relief From Judgment* at 3, ¶ 1, and accompanying *Memorandum* at 6. The *Memorandum Opinion and Order Denying Motion for Relief from Judgment* acknowledges that Petitioner made such an argument in the first paragraph of the decision. Petitioner preserved the same issue, along for the factual basis for the claim in the subsequently filed *Application for Leave to Appeal,* to the Michigan Court of Appeals at 3, and his *Delayed Application for Leave to Appeal* at 20-24 to the Michigan Supreme Court.

-15-

must be highly deferential," and that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight...." 466 U.S. at 689. This objective review "includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523; 123 S.Ct. 2527, 2536, 156 L.Ed.2d 471 (2003), quoting *Strickland*, 466 U.S. at 689.

### a.    Counsel's Performance

Neither the misaddressed letter nor its contents form the predicate of a Sixth Amendment violation.  Although appellate counsel's error might arguably have violated Michigan Rules of Professional Conduct (MRPC) by failing to promptly inform Petitioner of his appeal denial or that he had fifty-six days in which to file a leave to appeal, appellate counsel's carelessness does not necessarily imply a constitutional violation.[11]   In *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004), the court held that to show ineffective assistance, "a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *People v. Bass*, 457 Mich. 866; 577 N.W.2d 667  (Mich. 1998); *See also People v. Reed 449,* Mich.

---

[11]MRPC 1.16 (d): "Upon termination of representation, a lawyer shall take reasonable steps to protect a client's interests, such as giving reasonable notice to the client.".  The Court notes that although retained, his attorney arguably did not comply with the "minimum standards" stated in Michigan Supreme Court Administrative Order 2004-6, which sets forth requirements for appellate counsel of *indigent* criminal defendants. Standard 8 states: "Upon final disposition of the case by the court, counsel shall promptly and accurately inform the defendant of the courses of action that may be pursued as a result of that disposition, and the scope of any further representation counsel may provide. If counsel's representation terminates, counsel shall cooperate promptly and fully with the defendant and any successor counsel in the transmission of records and information."

-16-

375, 385-386, 535 N.W.2d 496, 502 (1995).  Appellate counsel's inadvertently misaddressed notification of the appeals court's decision  does not rise to that level.

Second, although Petitioner did not receive notification of the Court of Appeals decision until six days after the twenty-one day deadline for a timely appeal to the Supreme Court, pursuant to MCR 7.302(C)(3), he had an additional thirty days before the expiration of the fifty-six day deadline for a delayed application for leave to appeal.  Petitioner, who apparently possessed the wherewithal to prepare and file an application for leave by March 5, 1998, presumably had the means to discover between January 14, 1998 and the second week of February, 1998 that his application required filing within fifty-six days.  Any errors committed by appellate counsel could have been mitigated by Petitioner in the thirty days between receiving the appellate decision and the fifty-six day deadline.  Petitioner's own failure to prepare and file a timely submission was the primary cause of his procedural default.

### b.    Prejudice

 Nor has Petitioner satisfied the "prejudice prong of *Strickland*.  He cannot show that "but for" appellate counsel's deficiencies, his claims would have succeeded on appeal. *Hutchison,* 303 F.3d at 743.

First, Petitioner fails to present a convincing  argument that his confession, which he claims was induced through coercion in violation of the Fifth and Fourteenth Amendments, should have been suppressed.  He alleges that on the day of his arrest, his request for counsel

was denied.   Petitioner also claims that after being identified in a lineup the next day, he signed two pieces of blank paper after being assured by the officer that his verbal statement denying responsibility would be typewritten onto the blank pages. Petitioner alleges that officers instead inserted a statement that he had commited the killing in question in self defense.

The Fifth Amendment to the U.S. Constitution guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." *Miranda v. Arizona,* 384 U.S. 436; 86 S.Ct. 1602; 16 L.Ed.2d 694 (1966) held that in custodial interrogation, the privilege against self-incrimination implies a right to counsel.  In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court held that when a suspect is held in custody, interrogation must cease when he invokes the right to counsel until such time that counsel is provided or the suspect initiates further conversations or exchanges with police. The Supreme Court defined  "interrogation" as consisting of "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Marsack v. Howes* 300 F.Supp.2d 483, 495 (E.D.Mich. 2004); *Rhode Island v. Innis,* 446 U.S. 291, 301; 100 S.Ct. 1682; 64 L.Ed.2d 297 (1980).

Officer Samuel Quick, who took Petitioner's confession, testified at the *Walker* hearing that he spoke briefly to Petitioner on the day of arrest, but that his questions were limited to whether Petitioner knew the deceased and where he had been at the time of the

-18-

killing. *Walker* hearing at 6. Officer Quick reported that the next day, he read Petitioner his Miranda rights and also asked Petitioner to *read* his rights shortly after a witness to the killing identified Petitioner in a lineup. *Id.* at 7-8.   Officer Quick testified that Petitioner indicated that he wanted to make a statement and went on to admit that he killed the deceased in self-defense. *Id*. at 11-13.   Contrary to Petitioner's claim, Quick stated that Petitioner never requested an attorney and that the two pages signed by Petitioner contained a summary of his confession at the time he placed his signature on them. *Id.* at 13.

Petitioner's *Miranda* claim is defeated by review of the transcript of his *Walker* hearing.  Record's Court Judge Thomas E. Jackson found that although the police did not read Petitioner his *Miranda* rights until his second day of custody, during Petitioner's first day, "nothing that was said or done incriminated defendant." *Id*. at 67.  The Court found further that Petitioner's claim that he was "tricked" into signing blank pieces of paper with the promise that he would be allowed to go home "defied imagination." *Id*. at 68.  The Court rejected Petitioner's testimony, expressing disbelief that an officer would go to the trouble of "conjuring up . . . what amounts to a statement of self defense. " *Id*. at 68-69.

The trial court, after hearing the testimony and observing the demeanor of both Officer Quick and Petitioner,  made a credibility determination that should not be disturbed by this Court.  Although "[d]eference does not by definition preclude [habeas] relief," *See Miller-El v. Cockrell*  537 U.S. 322, 340; 123 S.Ct. 1029, 1041 (2003), ."[f]indings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of

-19-

rebutting the presumption of correctness by clear and convincing evidence.'" *Bailey v. Mitchell,* 271 F.3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). In the absence of such clear and convincing evidence, Petitioner is not entitled to challenge the trial court's credibility determination on habeas review. Thus, Petitioner has not shown prejudice with regard to his Fifth Amendment claim.

Similarly, Petitioner cannot establish that he would be prejudiced if procedural default prevented habeas review of his first, second, and fourth claims. These alleged Fourth Amendment violations, that his warrantless arrest lacked sufficient probable cause, that he was deprived of due process of law by the ensuing, "illegal detainment," and that he suffered deprivation of his due process rights by the insufficiency of information to secure a valid arrest warrant, are precluded from habeas review under *Stone v. Powell,* 428 U.S. 465; 96 S.Ct. 3037; 49 L.Ed.2d 1067 ( 1976). In *Stone,* the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482; 3046. The Court "reasoned that the judicially-created exclusionary rule is designed to deter illegal police practices and does not relate to the accuracy of the fact-finding process." *Staley v. Jones*, 239 F.3d 769, 777 (6th Cir. 2001). In *Staley*, the Sixth Circuit found that if the exclusionary rule, which was created to prevent police abuses, were considered on habeas review years after the conviction, it would defeat the original deterrent purpose of the rule and "might well have the opposite effect of generating disrespect for the

law and administration of justice." *Id.*; *Stone,* at 428 U.S. at 493 n. 35.

Here, Petitioner not only invokes claims barred by the *Stone* doctrine from habeas review, but fails to establish that he was denied "an opportunity for full and fair litigation." Petitioner not only had the opportunity to raise his Fourth Amendment arguments, but availed himself of such an opportunity both at the trial and appellate level.   Petitioner's appeal of right, decided December 19, 1997, raised the issues of insufficient probable cause for his warrantless arrest, his allegedly illegal detainment, and argument that the criminal complaint contained insufficient information to secure a valid arrest warrant. *Petitioner's Court of Appeals Brief* at 9-12.   That Petitioner disagrees with the findings of the trial and appellate court is immaterial to the conclusion that his Fourth Amendment arguments were raised and considered in state court and are therefore barred from this Court's review.  *See Griffin v. Berghuis*, 298 F.Supp.2d 663, 676 (E.D.Mich. 2004) ("The claims were fairly considered and rejected. *Stone v. Powell,* requires nothing more").**[12]**

---

[12]Petitioner's sixth claim states that he was denied due process and equal protection of the law by the Michigan Supreme Court's refusal to accept his untimely leave to appeal application.   He argues that the Court routinely accepts untimely applications from prosecutors and parties represented by counsel.

Petitioner refers to the concurring opinion in *Keen v. Warden, Thumb Correctional Facility,* 444 Mich. 871, 509 N.W.2d 148, 149 (Mich.1993) which derided the majority's "apparent effort to maintain that it is adhering to strict enforcement of the fifty-six day time limitation, [ordering] the Court of Appeals to reissue its order of June 13, 1991, denying the motion for rehearing." In other words, while the Court asserted that it stringently enforced the fifty-six day deadline stated in MCR 7.203(C)(3), it occasionally skirted the rule by ordering the Court of Appeals to reissue its original order, thus giving the defaulting party fifty-six days from the time of the new order to file an application.

Labeling such a practice a "circumlocution" and "stultifying," the concurring opinion criticized the procedure for two reasons.  First, it argued that while the court rule governing

## B.    Actual Innocence

As noted in section **A.**,  Petitioner's seventh issue states that he has presented "new reliable evidence of actual innocence" which would permit the Court to conduct a collateral review of an otherwise procedurally defaulted claim.  *Motion for Leave to File Supplemental Brief* at 1.  Petitioner claims that he is innocent of the murder of William Todd Harris. *Id.* at 18.

In *Murray v. Carrier,* 477 U.S. 478, 495-496, 106 S.Ct. 2639, 2649, 91 L. Ed. 2d 397 (U.S. 1986), the Court held that although "for the most part, victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard,  we do not pretend that this will always be true."  Deeming exceptions to the cause and prejudice test "extraordinary" cases, the Court conceded that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant writ even in the

---

appeals of right, MCR 7.204(A) stated that the filing deadline was clearly jurisdictional, MCR 7.203(C)(3) does not state that the time limit for filing a delayed application for leave with [the] Court is jurisdictional. *Id.* at 151.  Second, the concurring opinion noted that the Court clerk's practice of rejecting untimely applications without the opportunity for judicial consideration of the merits of the appeal bore most heavily on criminal defendants. "Most of the delayed applications are in criminal cases from indigent defendants who are incarcerated, who generally assert that they were not timely advised by their lawyer of the decision of the Court of Appeals."  *Id.*  I generally agree with the sentiments expressed in Justice Levin's concurrence.  However, Petitioner's case is distinguishable from the instances cited above since he acknowledged that he received notice that his appeal had been denied several weeks before the fifty-six day deadline.

In addition, as discussed in the preceding sections, even if there were no procedural default, Petitioner would not succeed on the merits of the underlying issues.

absence of a showing of cause for the procedural default." *Id.  See also Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005), quoting *Schlup v. Delo,* 513 U.S. 298, 326-27, 115 S.Ct. 851, 130 L.Ed.2d 808 ("[A] claim of actual innocence can be raised 'to avoid a procedural bar to the consideration of the merits of the petitioner's constitutional claims'").

However, "'actual innocence' means factual innocence, not mere legal insufficiency." *Kelley v. Jackson,* 353 F.Supp.2d 887, 893 -894 (E.D.Mich.,2005)(quoting *Bousley v. United States,* 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. at 865.

In large part, Petitioner's supplemental brief argues that the alleged  Fourth and Fifth Amendment violations should be reassessed in light of recent reports that "the Detroit Police Department has for years [sic] routinely arrested, threatened and browbeaten persons who were not suspected of any crime, but who police believed had information about a homicide." *Motion for Leave to File Supplemental Brief*  at 2.  Petitioner claims that Raymondo Bankhead, an individual who was arrested at the same time as he, implicated him in the homicide only after the police "threatened and intimidated" him into making a statement. *Id.* at 8, 17.  He claims further that Ponce DeLeon Brown's statements to the police and trial testimony implicate a known drug dealer,  Kevin Lamont Philips, a.k.a. "Eli," who lived in

the same neighborhood as the victim. *Id.* at 11,18.  Petitioner suggests that Philips bribed police to avoid arrest. *Id.* at 12.

Although Petitioner's supplemental pleading contains accounts of  Detroit Police Department misconduct, he does not allege that any of the officers named in those exposés had any personal involvement in his case.  If Petitioner's line of reasoning were adopted, every individual convicted of homicide in the City of Detroit during the period police misconduct was alleged would be granted habeas relief.

Further, even if Officer Quick's testimony at the *Walker* Hearing were rejected by the Court on the basis of the corruption investigations, Petitioner cannot dispute that a civilian eyewitness identified him at trial as the individual who murdered Harris.  *Jury Trial* July 22, 1996, at 180.  Petitioner's claim that Ponce DeLeon Brown's testimony actually implicated an individual resembling Philips is belied by the trial transcript.  Petitioner attaches great significance to Brown's testimony on recross-examination that upon viewing photographs at the police station the day after the murder, he commented that an individual in one of the pictures resembled a man living on his street.  According to Brown, he had seen the individual "a couple of times." *Id.* at 219.   However, Brown distinguished the individual in the photograph from Petitioner whom he could not recall ever seeing prior to the night of the murder. *Id.*  Brown unequivocally identified Petitioner as the person who administered the victim's *coup de grace*.

Notably, Brown's trial testimony also indicates that he put his own well-being at risk

-24-

by testifying.  Brown stated that Petitioner called Brown's mother prior to trial and threatened to blow up her house if Brown testified, and on other occasions, offered him money and a car if he would agree not to testify.  *Jury Trial* July 22, 1996, at 169-170, 213-214.  Petitioner offers no evidence to support his contention that Philips bribed police to avoid arrest. None of Petitioner's newer theories arguing for habeas relief establishes his "actual innocence" using the *Schlup* requirements of "exculpatory scientific evidence,  trustworthy eyewitness accounts, critical physical evidence," or any other equivalent means.

## V.  CONCLUSION

For the reasons set forth above, I recommend that the Petition for Writ of Habeas Corpus be denied.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate

-25-

Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/R. Steven Whalen**
**R. STEVEN WHALEN**
**UNITED STATES MAGISTRATE JUDGE**

**Dated: May 10, 2005**

**CERTIFICATE OF SERVICE**

**The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 10, 2005.**

**s/G. Wilson**
**Judicial Assistant**