UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BODIE JAMES DAVIS,

        Petitioner,

                                  Case Number 01-10202-BC
v.                                    Honorable David M. Lawson

THOMAS BIRKETT,

        Respondent.
_____/

## OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Bodie James Davis, currently incarcerated at the Macomb Correctional Facility in New Haven, Michigan, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In July of 1996, the petitioner was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b ("felony firearm"). A Detroit Recorder's Court judge sentenced Davis to a prison term of life for the murder and two years for the felony firearm conviction. Davis filed his amended habeas petition in 2003 raising six claims challenging his conviction, and in 2004 he filed a supplement that raised or clarified an additional claim.

The respondent filed a response on May 23, 2003 asserting that the first four claims in the petition were procedurally defaulted and arguing in essence that the fifth and sixth claims were without merit. The matter ultimately was referred to Magistrate Judge R. Steven Whalen, who issued a Report and Recommendation recommending that the petition be denied. The Report and Recommendation was briefly amended on May 27, 2005 to clarify the judge's reasoning on one point. The petitioner filed timely objections to the Report and Recommendation and its amendment,

as well as a motion for leave to file a supplemental claim of ineffective assistance of counsel supporting his actual innocence claim. These matters are now before the Court for *de novo* review. The petitioner also has filed a motion for reconsideration of the order denying his motion to designate Rule 5 materials.

The Court agrees with the magistrate judge's reasoning that some of the petitioner's claims are procedurally defaulted and all of the claims are without merit. Therefore, the Court will overrule the objections, adopt the magistrate judge's recommendation, and dismiss the petition for lack of merit of the grounds presented.

I.

The facts and procedural history of the case were set forth in the magistrate judge's report. Neither party takes issue with those portions of the report, and the Court adopts them.

The petitioner filed his amended petition for writ of habeas corpus on March 10, 2003, raising the following six claims:

> I. Where there was insufficient probable cause, Petitioner's warrantless arrest was in direct violation of the United States Constitution[] Bill of Rights, Amendments IV, V and XIV.
>
> II. Petitioner was deprived of due process of law when he was illegally detained under arrest without a warrant and his arraignment was unconstitutionally delayed while the investigating police officers collected evidence in violation of the United States Constitution[] Bill of Rights, Amendments IV, V and XIV.
>
> III. Where the petitioner's confession was induced through coercion, the admission of said confession into evidence was in violation of the United States Constitution[] Bill of Rights, Amendments V and XIV.
>
> IV. Petitioner was deprived of due process of law when there was insufficient information contained in the complaint to secure a valid arrest warrant in violation of the United States Constitution[] Bill of Rights, Amendments IV and XIV.

> V.  Petitioner was deprived of effective assistance of appellate counsel where David S. Steingold failed to timely serve Petitioner with the court of appeals opinion and order causing him to default in the Michigan Supreme Court being in violation of the United States Constitution[] Bill of Rights, Amendment XIV.
>
> VI. Petitioner was denied due process and equal protection of the application of the laws where the Michigan Supreme Court denied filing of the (untimely) application for leave to appeal, while routinely allowing prosecutor's [sic] and other appellants who are represented by counsel to file untimely applications, in violation of the United States Constitution[] Bill of Rights, Amendment XIV.

In a supplemental brief filed on September 3, 2003, the petitioner added a seventh issue:

> VII. Petitioner's conviction and sentence must be vacated, where in support of Petitioner's allegations of constitutional error Petitioner has presented new reliable evidence of actual innocence.

The magistrate judge found that the petitioner's first and third claims were procedurally defaulted because the petitioner failed to appeal these claims timely to the Michigan Supreme Court. The petitioner's fifth claim, the claim of ineffective assistance of appellate counsel, was presented as cause for this procedural default. The magistrate judge found that the petitioner failed to show cause for the procedural default because counsel's inadvertent misaddressing of an envelope to be sent to the petitioner containing the court of appeals decision and notifying him of the deadline for filing an application for leave to appeal did not rise to the level of a constitutional violation; the petitioner failed to show prejudice for the default because the underlying claims, the first and third claims of the petition, were without merit.

The magistrate judge also noted that the petitioner's first, second, and fourth claims were barred from habeas review by *Stone v. Powell*, 428 U.S. 465 (1976). The magistrate judge added in a footnote that the petitioner's sixth claim was without merit because it rested on the remarks of a Michigan Supreme Court justice in a concurrence and because the petitioner ultimately received

word of the court of appeals decision before the time for filing a delayed application for leave to appeal had passed.

Finally, the magistrate judge found that the petitioner's actual innocence claim was without merit because the petitioner had failed to submit new reliable evidence of his innocence. The petitioner had submitted accounts of corruption and abuse by members of the Detroit police department, but he could not link those accounts of abuse to the police who worked on his case or show conclusively that they violated the law in his case.

II.

The petitioner objects to the Report and Recommendation on the following grounds: (1) the magistrate judge relied on law inapplicable to his case; (2) the magistrate judge held the petitioner's claim of ineffective assistance of counsel to a more stringent standard than the *Strickland* standard; (3) *Stone v. Powell* is inapplicable to his claims and he was not afforded a "full and fair" opportunity to litigate them; (4) because he is actually innocent, his procedural default should be excused; and (5) he showed sufficient prejudice on his claim that his confession was coerced and admitted in violation of his *Miranda* rights.

A.

First, the petitioner argues that the magistrate judge improperly referred to a Michigan Supreme Court administrative order that he claims should not apply to his case. The magistrate judge referred to the administrative order in describing professional standards for appellate counsel appointed to represent indigent defendants. The magistrate judge explained that the petitioner's counsel may have violated the Michigan Rules of Professional Conduct (MRPC) by failing to inform the petitioner promptly that his appeal was denied and he had fifty-six days to file an application for

-4-

leave to appeal. He quoted Michigan Supreme Court Administrative Order 2004-6, which set forth standards for appellate counsel for indigent criminal defendants. However, the magistrate judge found that counsel's deficient performance did not rise to the level of a constitutional violation. The petitioner's argument that the administrative order does not apply to his case is beside the point. The magistrate judge noted that the administrative order he quoted applied to assigned counsel; the petitioner had retained counsel. The magistrate judge correctly determined that the petitioner's counsel's performance was not so deficient that it amounted to a violation of the petitioner's Sixth Amendment right to counsel.

B.

Next, the petitioner asserts that the magistrate judge applied a standard more stringent than the standard in *Strickland v. Washington*, 466 U.S. 668 (1984), in determining whether counsel had been ineffective. The petitioner notes that the magistrate judge himself admitted that a default stemming from "counsel's ignorance or inadvertence rather than from a deliberate decision" may constitute cause. *Murray v. Carrier*, 477 U.S. 478, 487 (1986). The petitioner argues that the prejudice prong of the *Strickland* test only requires a "reasonable probability" of a different outcome. *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003). "Had counsel been competent enough to properly address a simple letter, petitioner's application would have been timely—with approximately 25 days to spare." Pet'r's Objections to the Report and Recommendation at 3.

To show a violation of his constitutional right to counsel as a result of counsel's ineffective assistance, the petitioner must fulfill both prongs of the *Strickland test*: he must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 688, 693. The Court agrees

with the magistrate judge that counsel's performance did not fall below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Misaddressing the envelope to the petitioner was not performance so deficient that counsel failed to act as the "counsel" guaranteed by the Sixth Amendment. With respect to prejudice, although the petitioner received delayed notice of the decision and of the deadline for filing an application for leave to appeal, he ultimately received the notice before the time had expired for filing a delayed application for leave to appeal. He was not prejudiced by these events because he still had time to file a delayed application for leave to appeal. Upon discovering that the time had expired for him to file a regular application for leave to appeal, the petitioner could have retained new counsel or proceeded on his own to file a delayed application for leave to appeal. To fulfill the prejudice prong of the *Strickland* test, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The petitioner's untimely application for delayed leave to appeal cannot be attributed solely to the actions of appellate counsel. Therefore, the petitioner has not shown that appellate counsel was constitutionally ineffective because he has established neither deficient performance nor prejudice. The magistrate judge was correct in reaching these conclusions.

The petitioner's reference to *Murray v. Carrier* is unavailing as well. The Supreme Court held in *Carrier* that the reason for a procedural default—that is, counsel's inadvertence or counsel's trial strategy—is not dispositive of whether a petitioner has shown cause for a procedural default. *Carrier*, 477 U.S. at 488. The Court stated: "We think, then, that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally

ineffective under the standard established in *Strickland v. Washington*, *supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."

The petitioner's second objection is overrruled.

C.

The petitioner contends next that *Stone v. Powell*, 428 U.S. 465 (1976), does not foreclose habeas review of his first, second, and fourth claims and he did not receive a "full and fair" opportunity to litigate the search and seizure issues in state court.

The petitioner asserts that the Court must evaluate his claims because they are not based only on the Fourth Amendment. In *Cardwell v Taylor*, 461 U.S. 571 (1983), and *Kimmelman v. Morrison*, 477 U.S. 365 (1986), he argues, the Supreme Court held that *Stone v. Powell* applied only to habeas claims raising Fourth Amendment violations. Presumably, the petitioner infers that his argument that the trial court abused its discretion and violated his due process rights in deciding his Fourth Amendment claims obligates this Court to consider these claims. However, the *Cardwell* court simply reversed and remanded a habeas case where the lower court erroneously had considered a claim based on a violation of the Fourth Amendment. The Court in *Kimmelman* held that, although courts could not consider Fourth Amendment claims on habeas review, they could consider claims of ineffective assistance of counsel on habeas review where counsel had failed to raise or preserve Fourth Amendment claims. Neither of these cases stand for the proposition that a habeas petitioner can seek relief from a conviction on Fourth Amendment grounds by alleging that the trial court deprived him of due process by erroneously deciding a Fourth Amendment claim.

Furthermore, the petitioner has not shown that he failed to receive a "full and fair" opportunity to litigate his claims in state court. *Stone*, 428 U.S. at 481-82 , 494 (holding that "where

the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"); *accord Cardwell*, 461 U.S. at 572; *Gilbert v. Parke*, 763 F.2d 821, 823-24 (6th Cir. 1985). A state criminal defendant has a full and fair opportunity to litigate his Fourth Amendment claim when (1) the state's procedural mechanism allows the opportunity to present a Fourth Amendment claim; and (2) the defendant's presentation of his claim was not "in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). In Michigan, a motion to suppress evidence may be raised before trial, during trial, and even on appeal. *See People v. Ferguson*, 376 Mich. 90, 93-95, 135 N.W.2d 357 (1965); *People v. Harris*, 95 Mich. App. 507, 509, 291 N.W.2d 97 (1980). "All that *Stone v. Powell* requires is an 'opportunity' for full and fair consideration of the claim for suppression; it is up to the claimant and his counsel to decide what use, if any, is to be made of the opportunity." *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986). The petitioner raised his claim that police lacked probable cause to arrest in his appeal of right. Thus, it does not appear that the petitioner's presentation of his Fourth Amendment claims was frustrated because of a failure of the state court mechanism. The magistrate judge correctly rejected the petitioner's first, second, and fourth claims based on the rule of *Stone v. Powell*.

### D.

Next, the petitioner argues that any procedural default must be excused because he is actually innocent and is entitled to an evidentiary hearing on his claim. He argues that he presented new reliable evidence establishing that a police officer involved in his case, Officer William Rice, was involved in police corruption. However, the petitioner again has failed to show that this officer's

alleged corruption bears on the petitioner's actual innocence. The petitioner alleges that Officer Rice inserted facts into Ponce DeLeon Brown's statement to implicate the petitioner and suggested to Brown that "the short guy" was the shooter with the shotgun, which led Brown to identify the petitioner in a lineup in which the petitioner was the shortest man. This argument is speculative because the petitioner has no evidence that any officer tampered with Brown's statement. Brown did not imply that Officer Rice suggested anything to him. At trial, Brown gave an account that was consistent with his police statement. An accusation that Officer Rice acted improperly in a different case does not prove that he acted improperly in the petitioner's case.

In his motion for leave to file a supplemental claim of ineffective assistance of counsel supporting his actual innocence claim, the petitioner argues that trial counsel was ineffective for (1) failing to investigate and pursue a defense theory that someone else committed the crime and (2) failing to pursue and present witnesses who could testify favorably to the defense or cross-examine witnesses thoroughly. He also argues that appellate counsel was ineffective for failing to raise these issues of ineffective assistance of trial counsel on appeal.

The argument that trial counsel failed to investigate and pursue a defense theory that someone else committed the crime is undercut by the trial record: trial counsel did cause the reading of statements into evidence that some witnesses saw a white Ford Bronco at the scene of the crime and people in that vehicle may have done the shooting. The petitioner does not explain what further evidence or testimony trial counsel could have secured that would have supported this theory.

The witnesses to which the petitioner refers are Edward Washington and Wilfred Finley, who were subpoenaed by the defense but failed to appear in court. The transcript reveals that the witnesses could not be located by police and the parties agreed to read the relevant portions of their

police statements into the record in the presence of the jury. The petitioner has not shown that counsel's performance was ineffective or that he was prejudiced by counsel's performance.

The petitioner also argues that trial counsel should have called Kimberly Smith as an alibi witness. He says that she could have testified that the petitioner was not at her home at the time of the shooting, she told him there had been a shooting the next day, and he asked who got shot. However, Smith's testimony would have been little help to the petitioner's case. She told police that the petitioner was at her house until at least 10 p.m. on the night of the shooting, at about 11 p.m. the victim called and asked for the petitioner and she told him that the petitioner was not there, and about 45 minutes later she heard gunshots outside. She did not see the shooting and could not testify as to the petitioner's whereabouts at the time of the shooting. The petitioner was not prejudiced by counsel's failure to call this witness.

Moreover, these arguments of ineffective assistance of counsel were not raised in the state courts; they are procedurally defaulted. The petitioner argues that the procedural default should be excused because he presents new evidence of actual innocence. However, none of this evidence shows that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Carrier*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner has made no such showing in this case. All of the "new evidence" the petitioner presents is only marginally helpful to his case. Even if the claims were not procedurally

defaulted, they are without merit. The motion to for leave to file a supplemental claim of ineffective assistance of counsel will be allowed, but the claim is rejected on its merits.

E.

Finally, the petitioner argues that the magistrate judge erred when he found that the petitioner had not shown sufficient prejudice regarding his claim that his confession was coerced and received in evidence in violation of his *Miranda* rights. He argues that the *Walker* hearing held by the trial court was not sufficient to protect his rights because new evidence shows that the Detroit police department was corrupt. He also asserts that the Court need not afford the presumption of correctness to the trial court's finding on the matter because this Court must review the matter *de novo* pursuant to *Carrier*. He asks that the matter be remanded to the magistrate judge for an evidentiary hearing on the issue. Finally, he argues that the magistrate judge was wrong when he stated that witness Ponce DeLeon Brown implicated the petitioner.

The petitioner's coerced confession claim is procedurally defaulted as explained in Part II. B., above. Even if the Court were to consider this claim on the merits, the claim would not warrant habeas relief.

The factual basis of this claim was developed in the state court in a *Walker* hearing. Under federal law, a confession obtained during custodial interrogation may be deemed unconstitutional on at least two grounds: that the confession was involuntary, *see Jackson v. Denno*, 378 U.S. 368, 376-77 (1964); *Colorado v. Connelly*, 479 U.S. 157, 163-65 (1986), and that the detainee was not advised of his rights under *Miranda*. *See Dickerson v. United States*, 530 U.S. 428, 440 (2000). Such determinations generally are made before trial, outside the presence of the jury, at a separate hearing. That procedure was initiated in Michigan by the pronouncement in *People v. Walker (on*

*reh)*, 374 Mich. 331, 132 N.W.2d 159 (1965), and such hearings have come to be known as "*Walker* hearings."

At the *Walker* hearing, the petitioner and Officer Samuel Quick testified about the circumstances surrounding the petitioner's statement. The magistrate judge discussed the contradicting versions of events as related by the testimony of Officer Quick and the petitioner. The magistrate judge then properly determined that the trial court evaluated the credibility of the witnesses and resolved the fact issues against the petitioner. The state court concluded that the statement was voluntary and the petitioner's *Miranda* rights were not violated. The Michigan Court of Appeals held that the trial court's "assessment of [the petitioner's] credibility was sound and, therefore, should be left undisturbed." *People v. Davis*, No. 198578, *slip op.* at 3 (December 19, 1997). Pursuant to 28 U.S.C. § 2254(e)(1), state court factual findings are presumptively correct, and a petitioner may overcome this presumption only with "clear and convincing" evidence. The petitioner's contention that this claim must be reviewed *de novo* is incorrect; he fails to cite to a passage in *Carrier* that would support that interpretation.

The petitioner's "new evidence" bearing on this claim consists of newspaper articles stating that members of the Detroit police department arrested people who were believed to be witnesses to a crime in an effort to pressure them for information, and they told suspects that they would be allowed to return home once they made a statement to police. Although the petitioner did claim that he was told that he could go home if he made a statement, he also testified under oath that the statement he made to police did not implicate him in the crime. The trial court found the petitioner's testimony to be incredible that he signed blank pages to which the police added an incriminating statement. This finding is untouched by the "new evidence" the petitioner has suggested.

The petitioner is not entitled to an evidentiary hearing. Under 28 U.S.C. § 2254(e)(2)(B), a federal court does not hold an evidentiary hearing unless the applicant shows that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." The petitioner has not made such a showing. The newspaper articles of police abuses in other cases may cast vague doubt upon any number of cases, but they do not show by "clear and convincing evidence" that no reasonable factfinder would have found the petitioner guilty if this information were available at the time of trial. As the magistrate judge explained, the petitioner was identified conclusively as the shooter by eyewitness Ponce DeLeon Brown.

Contrary to the petitioner's assertions, Ponce DeLeon Brown did implicate him conclusively in the murder. The petitioner quotes a small ambiguous excerpt from the trial transcript in which Brown was questioned about another man he picked out of a photographic lineup who, he said, looked like one of the group who attacked the victim. As the magistrate judge noted, this exchange does not cast doubt on Brown's identification of the petitioner at trial.

### III.

The Court concludes that the magistrate judge correctly determined that the claims in the petition are procedurally defaulted and otherwise without merit.

Accordingly, it is **ORDERED** that the petitioner's objections to the Report and Recommendation are **OVERRRULED**. It is further **ORDERED** that the magistrate judge's report and recommendation is **ADOPTED**.

It is further **ORDERED** that the motion for leave to file a supplemental claim [dkt # 62] is **GRANTED**.

It is further **ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the motion for reconsideration [dkt # 57] of the order on motion to designate Rule 5 materials is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: February 9, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 9, 2006.

s/Tracy A. Jacobs<br>
TRACY A. JACOBS

---